UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM TOTMAN                                                                                    PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:07-CV-73-S

LOUISVILLE/JEFFERSON COUNTY                                                   DEFENDANTS
METRO GOVERNMENT, et al.

### MEMORANDUM OPINION

This matter is before the court on the motion of defendants Louisville/Jefferson County Metro Government ("Metro"), Christopher Hornback, in his individual capacity ("Hornback"), and Unknown Defendants, Louisville Metro Corrections officers and nurses in the employ of Louisville/Jefferson County Metro Government, in their individual capacities ("Unknown Defendants") (hereinafter collectively, "Defendants"), for summary judgment (DN 39). Plaintiff William Totman ("Totman") has responded (DN 41) and Defendants have replied (DN 44). For the reasons that follow, Defendants' motion for summary judgment will be granted.[1]

---

[1] The court granted plaintiff's motion for leave to file a second amended complaint and deemed the same filed by Order dated December 10, 2008 (DN 47). The only amendment contained in the Second Amended Complaint was the inclusion of specific mention of the Fourteenth Amendment as an additional basis for this court's jurisdiction (¶ 1) and for plaintiff's claims under 42 U.S.C. § 1983 (¶¶ 14, 15).
   Defendants' motion for summary judgment seeks disposition of plaintiff's § 1983 claims, as predicated on the Fourth and Eighth Amendments. The court will address defendants' arguments in those regards herein. Neither party has submitted further briefing on the implications of the Fourteenth Amendment in this case.

BACKGROUND

This action arises out of Defendants' treatment of Totman while he was being booked on charges of possession of marijuana and possession of drug paraphernalia at the Louisville Metro Department of Corrections on March 5-6, 2006. Totman alleges that Hornback and Unknown Defendants used unreasonable and excessive force against him in the booking process and during his detainment. Specifically, Totman has alleged that while he was being booked:

> Officer Hornback grabbed him by the right arm and another officer grabbed him by the left arm. The officers then forcibly and violently twisted Mr. Totman's arms, picked him up by the arms, and threw him to the ground face first. Officer Hornback then "drove" his knee into Mr. Totman's back while the other officer began kicking Mr. Totman in the side. Additionally, an officer grabbed Mr. Totman by his hair and maced him in the face. . . The officers then handcuffed Mr. Totman and led him to the "hole." While handcuffed and in the "hole," Officer Hornback and other officers continued the beating of Mr. Totman, kicking and punching him. . . Officer Hornback stated words to the effect of "I can come in there anytime and do that to you. I can come back in there right now and do that to you and there aint a damn thing you can do about it." *Second Amended Complaint*, ¶ 8.

In deposition testimony, Totman has since admitted that he was not punched by anyone while he was in the hole; and that it was one Officer Stachoulas ("Stachoulas"),[2] not Hornback, who threatened him. *Deposition of William Totman*, pp. 77-80. Hornback maintains that he did not put his knee on Totman's back and that he did not escort Totman to the hole. *Deposition of Christopher Hornback*, pp. 67; 70. Defendants assert that Totman was combative and disruptive during the booking process, requiring the use of force by Corrections officers. *Motion for Summary Judgment*, p. 4. Defendants do not dispute that Hornback used some physical force against Totman.

Totman further alleges that Unknown Defendants were deliberately indifferent to his

---

[2]Officer Stachoulas has not been named as a defendant in this case.

-2-

medical needs subsequent to the use of force incident.[3] Following the alleged beating in the hole, Totman requested to be seen by a nurse because he was in pain. Jail nurses treated Totman's eyes for mace; but Totman alleges that the nurses and corrections officers refused to allow him the services of a physician or further medical attention. *Second Amended Complaint* at ¶ 9. Upon release from jail, Totman sought hospital treatment for chest contusions, back pain, arm injuries and head trauma. A later examination revealed that Totman sustained a rib fracture and ligament damage in both arms. *Id.* at ¶ 8.

Totman filed this civil rights action pursuant to 42 U.S.C. § 1983 and state law, specifically alleging unreasonable and excessive use of force and cruel and unusual punishment under the Fourth, Eighth, and Fourteenth Amendments on the part of Hornback and Unknown Defendants; unconstitutional failure to adequately hire, train, retain and supervise corrections officers and nurses including Hornback and Unknown Defendants on the part of Metro; and assault, outrageous conduct, intentional infliction of emotional distress, and negligent, grossly negligent, malicious, oppressive, and/or fraudulent conduct under state law on the part of Hornback and Unknown Defendants.[4]

The court has federal question jurisdiction over the claims in this action arising under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

---

[3] Totman specifically states that he is not claiming that Hornback denied him medical treatment. *Depo. of Totman* at 82.

[4] Totman has not made any claims against Metro asserting violations of state law. *Response to Motion for Summary Judgment*, p. 11.

DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Totman claims that Hornback and Unknown Defendants violated his constitutional rights to be free from the use of excessive force and cruel and unusual punishment, as guaranteed by the Fourth, Eighth, and Fourteenth Amendments. Totman argues that which of these Amendments provides a basis for his § 1983 claims is essentially an academic question. However, it is a question that matters. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of

force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Importantly, the standards of liability vary according to which amendment provides the basis for a § 1983 claim.  For example, "A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the objective reasonableness test of [the Fourth Amendment]. . ." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (*quoting Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001)).

Totman claims that Hornback and Unknown Defendants violated his Fourth Amendment right to be free from the use of excessive force.  Totman argues that while *Graham* left open the question of whether the Fourth Amendment protects an individual post-arrest but pre-trial, the Sixth Circuit answered that question in the affirmative in *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252 (6th Cir. 2001), "The right of a pre-trial detainee to be free from the use of excessive force under the Fourth Amendment is firmly established in our case law." *Vaughn* at 265.  However, the *Vaughn* Court's reference to the plaintiff there as a "pretrial detainee" appears to have been something of a misnomer.  In *Vaughn*, the plaintiff asserted that he was the victim of excessive force used *to effectuate* a series of arrests, in violation of his Fourth Amendment rights. *Id.*  So while Vaughn, in fact, encountered the use of excessive force "pre-trial," each of Vaughn's encounters with excessive force actually occurred in and during the course of his arrest.  Here, by contrast, Totman's alleged encounter with the use of excessive force occurred after he had already been arrested.

There can be no doubt that the Fourth Amendment protects the right of an individual to be free from the use of excessive force before and during arrest.  However, the Circuits vary as to when the Fourth Amendment's protections cease to operate after arrest, though it is clear that at some point they do.  In the Sixth Circuit, the Fourth Amendment continues to protect individuals post-

arrest as long as they are "seized," as defined by the continuing seizure rule. "The seizure that occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers." *Phelps* at 300 (*citing McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988)).

In this case, Totman was arrested by an Officer Wilder. Totman was no longer in Officer Wilder's custody at the time of the alleged use of excessive force. Therefore the Fourth Amendment does not apply.

Nor does the Eighth Amendment apply to Totman's claim of excessive force or failure to provide adequate medical care. The Eighth Amendment provides substantive protection from the infliction of cruel and unusual punishments after conviction. *Graham* is conclusive on this point of law. *Graham* at 395, n. 10; *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977). At the time of the alleged use of excessive force, Totman had not been convicted of any offense for which he had been arrested. Therefore the Eighth Amendment does not apply. Totman's § 1983 claims against Hornback and Unknown Defendants predicated on the Fourth and Eighth Amendments must be dismissed.

Totman claims that Metro was negligent in hiring, training, retaining and supervising Hornback and Unknown Defendants as to the proper use of force and the need for providing inmates necessary medical attention. Totman argues that such negligence reflects a deliberate indifference by Metro to his constitutional rights.

"In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), [the Supreme Court] decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat*

*superior* or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom. . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (internal quotation marks and citations omitted). Thus, the first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell* at 690. A municipal decision may also constitute policy when it is made by "those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694. A single decision by an individually authorized municipal policymaker may constitute official government policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). A municipal custom is a practice, although not authorized by written law, so permanent and well settled as to have the force of law. *Monell* at 690. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy or custom that directly caused the plaintiff's injury. *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

Totman has failed to identify a municipal policy or custom that directly caused him injury, or to present any evidence whatsoever in support of his claim that Metro was somehow negligent respecting the provision of medical attention for inmates.

Likewise, Totman has failed to identify a municipal policy or custom that directly caused him injury, or to present any evidence in support of his claims that Metro is liable based on negligent hiring or training.

Totman argues that Metro's decision to retain and its supervisory actions regarding Hornback constitute municipal policy reflecting deliberate indifference to the risk that Hornback would violate his constitutional right to be free from the use of excessive force. Where adequate scrutiny of an officer's employment history would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to retain the officer would be the deprivation of a third party's federally protected right, the official's decision to retain the officer constitutes deliberate indifference. See *Brown v. O'Bryan County* at 411. Inadequacy of police supervision may serve as the basis for § 1983 liability where the failure to supervise amounts to deliberate indifference to the rights of persons with whom the police come into contact. See *City of Canton* at 388.

Totman argues that Hornback's employment history with Metro prior to the use of force incident at issue here would lead a reasonable municipal policymaker to conclude that the decision to retain Hornback would likely lead to the violation of Totman's constitutional rights. In support of this contention, Totman has provided evidence of Hornback's disciplinary history with Metro:[5]

On March 20, 2004, Hornback was disciplined for withholding food from an inmate and for lying to his superiors during the departmental investigation. *Response to Motion for Summary Judgment*, Exhibit 1. On May 1, Hornback was cited for being involved in a verbal confrontation with inmates and for calling several inmates "bitches." *Id.* at Ex. 2. On May 6, Hornback was investigated for grabbing an inmate.[6] *Id.* at Ex. 3. On March 24, 2005, Hornback was suspended

---

[5]Hornback's disciplinary record subsequent to the events in this case is, of course, irrelevant as to what a reasonable municipal policymaker could conclude based on Hornback's disciplinary history prior to March 5, 2006.

[6]Captain Terry Green conducted the investigation and concluded that, "Based on Officer Hornback and Inmate Shields statement I did not fill [sic] the need to conducted further interviews as it is my belief that there was no unnecessary force or improper behavior."

-8-

for one (1) day in connection with an incident for failure to promote mutual respect within the profession (insubordination); dereliction of duty; failure to exercise due diligence/interest in pursuit of duties; conduct unbecoming; and using profane language. *Id.* at Ex. 4. On January 23, 2006, Hornback was cited in connection with an incident regarding his demeanor and mannerisms of speech towards inmates. *Id.* at Ex. 5.

While Hornback's employee record is far from exemplary, there is nothing in it that evidences that his continued employment made it "highly likely" that he would use excessive force against Totman, as is alleged here. *Brown v. O'Bryan County* at 412. Hornback's disciplinary history may be fairly characterized as dealing with predominantly attitudinal problems. In the one instance where Hornback was implicated in the use of physical force, he was fully exonerated of any wrongdoing. Totman seems to argue that based on the cumulative nature of Hornback's behavioral problems, Hornback should have been terminated. However, without more, this amounts to merely Totman's opinion.

Moreover, Totman has failed to show that a Metro policymaker made the decision to retain Hornback in furtherance of Metro policy. That Hornback was not been terminated prior to the incident involving Totman does not establish actuality of Metro policy anymore than it identifies a Metro policymaker who made the decision to retain Hornback. "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur* at 483-84. Totman has failed to establish that this is one of those situations. Totman has failed to show that a Metro policy directly caused him injury and, as such, his § 1983 claims against Metro must be dismissed.

Totman claims that Hornback assaulted him. Defendants argue that Hornback is entitled to qualified official immunity for his exercise of the use of force against Totman. Qualified official immunity affords protection from damages liability to public officers and employees for good faith acts performed in the exercise of their discretionary functions in legally uncertain environments. *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001). However, Totman alleges that Hornback acted in bad faith, thereby forfeiting his right to qualified official immunity and making him liable for assault in this particular instance. *Id.* at 523.

"Once the officer or employee has shown prima facie that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* Hornback has shown that his use of force against Totman was performed within the scope of his discretionary authority. As a Corrections officer, Hornback was authorized to use physical force against Totman for the purpose of enforcing the rules of the jail pursuant to KRS 503.110(2). At issue, then, is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See *Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); *see also Danese v. Asman*, 875 F. 2d 1239, 1243 (6th Cir. 1989) (pretrial detainees entitled to as much protection as convicted prisoners). Whether a reasonable inference may be drawn that an officer exercised the use of force in bad faith is a question of the totality of the circumstances.

Construing the facts in a light most favorable to Totman, there is no evidence that Hornback exercised the use of force against Totman in bad faith. Totman alleges that as he was walking away from getting his photo taken, "[Hornback] grabbed one arm, and [Stachoulas] grabbed the other; and

they kind of ran with me a little bit and bounced me on the floor on my head." *Depo. of Totman* at 64. Hornback admits that he placed Totman's right arm in an escort hold to escort him to a holding cell. Hornback further admits that he placed Totman in a vascular restraint hold and placed him on the floor in a prone position. Contrary to the allegations of fact in the second amended complaint, it is no longer disputed that Hornback *did not* punch or threaten Totman while he was in the hole. Hornback's use of force against Totman was limited to that used to subdue Totman in the booking area. Despite Totman's characterization of Hornback's use of force against him as an "attack," Totman has failed to show and there is no indication that Hornback wilfully intended to harm Totman or acted with a corrupt motive. Hornback is entitled to qualified official immunity for his actions in responding to Totman's behavior during the booking process. Totman's claim for assault against Hornback must be dismissed.

Totman's claim against Hornback for outrage, or intentional infliction of emotional distress, also must be dismissed. "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. App. 1993). Totman has not asserted that Hornback engaged in the conduct alleged herein for the sole purpose of causing him extreme emotional distress. Therefore Totman's claim for outrage against Hornback is precluded by his claim for assault.

## CONCLUSION

Because the court finds that there are no genuine issues of material fact and defendants are entitled to summary judgment as a matter of law as to Totman's § 1983 claims based on the Fourth

and Eighth Amendments and state law claims, defendants' motion for summary judgment will be granted.

A separate order will be entered herein this date in accordance with this opinion.